**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION**

UNITED STATES OF AMERICA                                              PLAINTIFF

    v.                   Case No. 05-30003-001

**CLIFFORD B. MARSTON**                                                    DEFENDANT

<u>**O R D E R**</u>

    Now on this 10th day of May, 2007, comes on for reconsideration **Defendant, Clifford B. Marston's, Motion To Proceed On Appeal In Forma Pauperis Without Payment For Court Reporter's Transcript** (document #63), and for consideration defendant's **Motion And Affidavit For Permission To Appeal In Forma Pauperis** (document #68).

    1.    Following a jury trial, defendant Marston was convicted of twenty-five counts of income tax evasion. He filed a Notice of Appeal, and now seeks leave to proceed on appeal *in forma pauperis* ("*ifp*"), but only for the limited purpose of having the government pay the cost of the trial transcript.

    2.    The Court first notes that, after some delay, it finally received an Affidavit regarding financial means from Marston (document #68). It had been represented to the Court that Marston had timely sent such an affidavit, via prison mail, directly to his attorney Joe Alfred Izen, but that for inexplicable reasons Izen never received the document. Because of those representations and its concern that Marston was not being permitted to post his mail while in prison -- or that, once posted, it was not getting through -- the Court directed the prison authorities to check into the matter and report to the

Court concerning it.

In response, Warden Michael A. Zenk explains the protocol for handling prisoner mail at the institution where Marston is incarcerated. A copy of his May 4, 2007, letter response is attached to this Order as Exhibit A. Based upon Warden Zenk's response, the Court sees no basis to believe that communications between Marston and his attorney were in any way interfered with or disrupted due to fault on the part of the prison. Accordingly, the Court is skeptical about Marston's representations that he timely sent an affidavit to his counsel.

3.   The rule with regard to taking an appeal *in forma pauperis* is set forth in **F.R.App.P. 24**, which provides, in relevant part, that the appellant must show his "inability to pay or to give security for fees and costs" of the appeal. The statutory underpinning of this rule is found in **28 U.S.C. §1915**, which provides, in relevant part, that

> any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses [and] that the person is unable to pay such fees or give security therefor.

The text of both the rule and the statute indicates that financial eligibility is one of the basic criteria for determining *ifp* status, and that the yardstick by which financial eligibility is measured is the ability to pay or secure payment of "fees and

**AO72A**
**(Rev. 8/82)**

costs."[1]

The form prescribed by **F.R.App.P. 24(a)** requires the applicant for *ifp* status to "swear or affirm under penalty of perjury that, because of my poverty, I cannot prepay the docket fees of my appeal or post a bond for them."  Marston so affirmed in his Affidavit, although this was clearly not the case: he noted in the body of the document that the "docket fee has been paid.  This 'ifp' application is for the transcript."

4.   Facts asserted in the pending motion and in Marston's later submissions clarify his contradictory statements about his ability to pay the docket fee.  It appears that when Marston filed his Notice Of Appeal, he had not only the funds to pay the filing fee, but also to pay his attorney, Izen, the accumulated attorney's fees he owed for the trial and a flat fee of $25,000.00 to handle his appeal.  Izen paid the appellate filing fee out of these monies, but asked Marston to pay for the transcript, whereupon Marston informed Izen that he had exhausted his financial resources, and could not pay for the transcript, which is estimated to cost $3,500.00.

5.   It is apparent from the foregoing that -- at least until Marston paid his attorney $25,000.00 to handle his appeal -- he was not an indigent defendant: he had at his disposal $25,000.00 to use in prosecuting his appeal.  In the Court's view, it would be an abuse of the system which provides public funds to indigent

---

[1] The fee for filing a notice of appeal, and the costs of the reporter's transcript, if needed to determine the appeal, are taxable costs on appeal. F.R.App.P. 39(e).

defendants, if a defendant were allowed to pauperize himself by paying his attorney a hefty fee, and then require the government subsidize the necessary transcript. Moreover, the Court sees no reason to believe that Marston could not have negotiated -- either with Izen or with some other lawyer -- both to pay for the transcript and to perform the legal work necessary, for his $25,000.00.

6. In addition, the current financial status of Marston and his wife does not fit the picture of those commonly found financially eligible for *ifp* status. According to Marston's Affidavit, his wife earns $1,000 a month. They have about $5,000.00 in cash, own two automobiles free and clear, have no credit card debt, and are creditors on a debt of $6,000.00. They have no dependents, and Mrs. Marston has lodgings for which she does not have to pay rent or utilities.

While Mrs. Marston is said to need surgery, which "may" leave her unable to work "for some time," no specifics (whether the surgery is necessary; how long Mrs. Marston would need to be out of work) are offered. Nor is there any explanation for why a single person who owns her own car would have $300.00 in monthly transportation expenses, exclusive of car payments and car insurance. There is no justification offered for why, when Marston is asking the government to pay for his transcript, his wife spends $100.00 per month on "recreation, entertainment, newspapers, magazines, etc." The typical indigent defendant has virtually no resources. The Marstons have significant, albeit limited, resources, and the Court does not believe they can be

fairly considered indigent.

    7.   The Court has recited these details about the Marstons' financial status to show the basis upon which it concludes that Marston does not qualify for *ifp* status for the purpose of having the government bear the cost of the transcript necessary to his appeal.  Marston was not indigent when he paid his lawyer to handle his appeal, nor are he and his wife demonstrably indigent at present.  The Court, therefore, finds that the motion should be denied.

    **IT IS THEREFORE ORDERED** that **Defendant, Clifford B. Marston's, Motion To Proceed On Appeal In Forma Pauperis Without Payment For Court Reporter's Transcript** (document #63) and **Motion And Affidavit For Permission To Appeal In Forma Pauperis** (document #68) are **denied.**

    **IT IS SO ORDERED.**

                                                **/s/ Jimm Larry Hendren**
                                                **JIMM LARRY HENDREN**
                                                **UNITED STATES DISTRICT JUDGE**